JASPER E. JONES, Judge.
In this action the plaintiffs, who are working interest owners in certain oil and gas wells in Claiborne Parish, Louisiana, seek an accounting and damages from defendants for failure to pay all sums owed for production, failure to produce and failing to maintain these wells in a prudent manner. The plaintiffs are William Marshall Shaw, Sr., and Marie Louise Shaw as the testamentary executrix for the Succession of Donald Joseph Shaw. One of the defendants, Champlin Petroleum Company (Champlin) appeals a judgment against it awarding plaintiffs expenses and attorney’s fees for its failure to supply documents for discovery pursuant to a stipulated LSA-C.C.P. art. 1461 request for discovery.[1] The judgment appealed also censured Champlin and its in-house counsel, Greg Gibson, for failure to comply in good faith with the discovery request. Plaintiffs neither appealed nor answered the appeal.
The assignments of error urged by Champlin, present four issues for review.
(1) Did the trial court err when it awarded plaintiffs attorney’s fees and expenses incurred in the aborted discovery effort as sanctions against Champlin? If the sanctions were appropriate, were they excessive?
(2) If plaintiffs are not entitled to the expenses and attorney’s fees awarded for their discovery efforts in Fort Worth, can they recover attorney fees for the legal work on the motion to compel discovery where the court did not enter an order compelling discovery?
(3) Was “censure” of Champlin and its in-house attorney a sanction authorized by the discovery law for failure to comply with LSA-C.C.P. art. 1461’s notice to produce documents?
(4) Did the trial court err in denying Champlin’s Motion for a Protective Order?

Background Facts

Plaintiffs instituted this suit against Champlin and other defendants alleging several causes of actions relating to the manner of operating certain oil and gas wells in which plaintiffs owned a working interest. Plaintiffs subsequently obtained an ex parte Order to Produce from the Second Judicial District Court directing Champlin to produce certain documents at its Fort Worth office on August 20, through August 22, 1985. Several depositions were scheduled in Fort Worth on August 22, as well.
At the request of Champlin’s counsel, who was concerned the ex parte Order to Produce was not obtained pursuant to the Louisiana Code of Civil Procedure, a joint stipulation was entered into between Champlin and plaintiffs wherein they agreed that the Order to Produce would have the effect of a Request for Production of Documents under LSA-C.C.P. art. 1461.[2]
*1056 On August 18, 1985, two days before the discovery proceedings were to commence, plaintiffs’ attorneys William M. Shaw, Sr., (Shaw, Sr.) and William M. Shaw, Jr. (Shaw, Jr.) drove to Port Worth to prepare for the discovery proceedings. On the morning of August 20, 1985, the Shaws arrived at Champlin’s office and were met by Champlin's counsel, Mr. Kelly, Kelly’s associate, Ms. Fullington and Champlin’s in-house counsel, Greg Gibson. The parties proceeded to a conference room where approximately 26 filing boxes full of documents and several loose files were made available to plaintiffs’ attorneys pursuant to the request for discovery. Mr. Gibson described the content of the boxes and files and from this point, the facts are in conflict.
According to the Shaws, the records Champlin had produced were not the ones they had requested to inspect; however, Shaw, Sr., informed the other parties that his nephew, Michael Shaw, would arrive after lunch to review these records. Shaw, Sr., then requested production of several additional records and at Gibson’s or Kelly’s request, dictated to Shaw, Jr., a list of specific items they wished to examine. After reviewing this list, Mr. Gibson stated he did not know where to locate much of the requested material, but he would search for them at Champlin’s office in Houston to which he planned to return that day and would bring all requested records found in Houston back to Port Worth the next morning. Mr. Kelly stated he had to return to his office in Lake Charles and would return to Port Worth on August 22, for the depositions. Mr. Kelly and Mr. Gibson departed, leaving Ms. Fullington to assist the Shaws.
Shaw, Sr., requested Ms. Fullington to produce the files of Ms. Robinson, the Supervisor of Interest Relations and Government Reporting for Champlin. Ms. Full-ington proceeded to Ms. Robinson’s office where she found Mr. Gibson and Mr. Kelly. Ms. Fullington returned to the conference room and informed the Shaws Mr. Gibson stated they could only see those documents which were already in the conference room. Shaw, Sr., demanded to see Gibson or Kelly, but Ms. Fullington stated they had departed. Shaw, Sr., requested to see someone with authority and Ms. Fullington left the conference room, but did not return.
After waiting about 45 minutes the Shaws left the conference room, proceeded to the reception area and summoned Ms. Fullington. Ms. Fullington appeared holding some documents she described as the content of Ms. Robinson’s files. Shaw, Sr., examined these documents and determined that they were correspondence between plaintiffs’ representatives and Champlin, which were already in the possession of plaintiffs. Shaw, Sr., demanded to see Ms. Robinson’s actual files, but Ms. Fullington refused to produce them. Shaw, Sr., informed Ms. Fullington they were going to lunch and would return about 2:00 p.m. and if she failed to obtain authority from Mr. Gibson by that time to release the files in Fort Worth for their inspection, the depositions would be cancelled and the matter referred to the district court.
At about 2:30 p.m. the Shaws returned to Champlin’s office. Ms. Fullington advised them she had been unable to reach Mr. Gibson or Mr. Kelly. Shaw, Sr., gave Ms. Fullington the number where they could be reached that afternoon and the Shaws departed. The Shaws did not receive a telephone call that afternoon, but when they returned to their motel shortly after 5:00 p.m., they were given a message from Mr. Gibson stating that he would be at Champ-lin’s office in Fort Worth the next morning. The Shaws checked out of their motel the following morning, advised the court reporter and the first deponent the deposi *1057 tions were cancelled and returned to Louisiana.
Mr. Mike Shaw arrived at Champlin’s office after lunch on August 20, and reviewed the material in the conference room. He advised Shaw, Sr., and Shaw, Jr., he could find nothing of value in these documents.
On September 30, 1985, plaintiffs filed a motion styled “Motion to Censure Attorneys For Breach of Ethics, For Order to Compel Discovery And For Sanction.”
Champlin contends that when the Shaws arrived at its office in Fort Worth on August 20, it was agreed there was enough discovery material in the conference room to keep the Shaws busy for the rest of the day. It was further agreed that the additional material requested and listed in writing on August 20, would be produced on August 21, when Mr. Gibson returned from Houston where he believed he would find these documents. According to Champlin, the Shaws did not express their dissatisfaction with the material produced in Fort Worth on August 20, until Mr. Gibson and Mr. Kelly had departed.
The trial court rendered judgment on plaintiffs’ Motion to Censure and for Sanctions. The trial court cast Champlin for plaintiffs’ expenses on the Fort Worth trip in the amount of $651.90 and $4,000.00 for plaintiffs’ attorney’s fees incurred on the Fort Worth discovery trip. The trial court “censured” Champlin and Mr. Gibson for “unconscionable, unethical and callous disregard of their obligations to the court and for abuse of judicial process.” In written reasons for judgment, the trial court stated plaintiffs’ Motion to Compel Discovery was moot because the parties agreed at a status conference to a workable discovery procedure.[3] No order to compel Champlin to produce any documents for discovery was included in the trial court judgment.

Issue No. 1 and No. 2

Motion To Compel Discovery and Sanctions

Champlin contends the trial court erred in granting plaintiffs’ motion imposing sanctions. Champlin argues it complied with the Request for Production and all parties agreed on August 20, that additional documents, including those on the handwritten list prepared by the Shaws, would be produced on August 21. Champlin contends a comparison of the Request for Production with the Shaws’ handwritten list, reveals that it was virtually impossible for it to know the Shaws desired to inspect items as specific as those on the handwritten list. Specifically, Champlin argues the Request for Production did not include “de-liverability tests, division orders or authority for apportioning costs on the Smackover well.” Champlin further contends the Shaws did not voice any objection to the documents produced in Fort Worth on August 20, until after Mr. Gibson and Mr. Kelly departed. Champlin argues the documents considered by the Shaws to be irrelevant on August 20, were examined by them at a later discovery proceeding without complaint. Champlin alternatively contends that if the trial court did not err in imposing sanctions, it erred in imposing excessive sanctions.
Plaintiffs contend the trial court was correct in granting their Motion imposing sanctions against Champlin. They argue Ms. Robinson’s files were in Champlin’s office in Fort Worth on August 20, but Champlin refused to produce them. The Shaws deny agreeing to review these documents on August 21.

Applicable Law

LSA-C.C.P. arts. 1469-1474 provide the means for enforcing discovery.
Article 1469 provides in pertinent part:
“A party, upon reasonable notice to other parties and all persons affected *1058 thereby may apply for an order compelling discovery as follows:
[[Image here]]
(2)... if a party, in response to a request for inspection submitted under Article 1461, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling ... inspection in accordance with the request....
(4) If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney’s fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.”
The discovery articles grant the trial court the power to compel discovery and the discretion to impose various sanctions on a party or his attorney fpr unjustified failure to comply with the statutory scheme or to obey an order compelling discovery. The granting of relief against a recalcitrant party rests within the trial judge’s discretion and will not be disturbed absent a clear abuse of that discretion. Butts v. Cummings, 360 So.2d 534 (La.App. 2d Cir.1978); Henson v. Copeland, 451 So.2d 41 (La.App.2d Cir.1984).
Where a failure to make discovery occurs, it is incumbent on the disobedient party to show that his failure was justified or that special circumstances would make an award of expenses unjust. Allen v. Smith, 390 So.2d 1300 (La.1980); Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4th Cir.1985).
LSA-C.C. art. 1469 authorizes an award of attorney fees and reasonable expenses incurred for obtaining an order compelling discovery where the defendant has failed to produce pursuant to a C.C.P. 1461 notice. The award is only authorized if the order to compel is granted. The award made against Champlin must be reversed because there was no order rendered pursuant to the Motion to Compel Production.
The trial court in its reasons for judgment declines to consider whether it should render an order to compel production on the documents sought by the plaintiffs because the litigants had agreed to discovery and the issue was moot. A review of the formal judgment signed on May 1, 1986, reveals it contains no order compelling the appellant to produce any document. Even if an order to compel discovery had been rendered, the award of attorney fees and expenses made by the trial court for the Fort Worth discovery effort was not authorized by the discovery law and for that reason alone must be reversed. A party who has been denied discovery sought pursuant to C.C.P. art. 1461 must file a Motion to Compel pursuant to C.C.P. art. 1469 which authorizes only expenses and attorney fees for obtaining the order to compel. If the trial court had rendered an order compelling production of documents, then an attorney fee and expense award for obtaining that order would have been authorized by law, but as we have pointed out, no such order was rendered. The expense and attorney fee award must be reversed.

Issue No. 3

Was the censure of Champlin and its in-house attorney proper?

LSA-C.C.P. art. 1469(4) provides that if the trial court grants a Motion to Compel Discovery, it may also require the party whose conduct necessitated the Motion to pay the moving party the reasonable expenses incurred in obtaining the order, including attorney’s fees. There is no authority contained in C.C.P. art. 1469 for the court, in its order to compel discovery, to censure the party litigant or its attorney for failure to comply with a C.C.P. art. 1461 request to produce documents for inspection. The plaintiffs have cited no case where a litigant or his attorney have been *1059 censured for failure to comply with a C.C.P. art. 1461 notice to produce documents for inspection and we have found no case approving censure of a litigant or his attorney for a failure to comply with a C.C.P. art. 1461 notice. We conclude the trial court erred in censuring Champlin and its in-house Texas attorney, Greg Gibson, for failure to comply with the request for discovery notice. The portion of the judgment censuring Champlin and Mr. Gibson for unconscionable and unethical conduct must be reversed.
Issue No. 4 — Protective Order & Sanctions
Champlin contends the trial court erred in overruling its Motion for a Protective Order and Sanctions. Champlin argues the Shaws arrived at its office in Fort Worth on August 20, and began to request production of specific documents without first looking through the documents which were already produced. Champlin contends the documents produced in Fort Worth on August 20 and deemed “dead records” by the Shaws were directly responsive to the Request for Production and the Shaws examined them at a later discovery proceeding without complaint.
Plaintiffs argue Champlin was not entitled to a Protective Order and Sanctions because it knew well in advance the extent and nature of discovery and failed to object. Plaintiffs contend Champlin agreed to produce any documents in its possession which were not privileged.
The trial judge, in written reasons for judgment, noted the parties, at a status conference, agreed to the manner in which future discovery would be conducted.
The record reveals the attorneys for plaintiffs and defendants, during the hearing on the Motions filed by each, entered into a stipulation concerning the terms of future discovery.
In light of these circumstances we find no abuse of discretion in the trial judge’s failure to award the protective order and sanctions sought by Champlin.
The trial court’s written reasons for judgment signed and filed April 11, 1986, was entitled “Judgment on Motion to Censure.” The formal judgment filed and signed May 1, 1986 is entitled “Judgment on Rule to Censure Attorneys for Breach of Ethics, for Order to Compel Discovery and Sanctions.” The appellant appealed both judgments because of the confusion created by the title on the reasons for judgment. We conclude the April 11, 1986, document is not the judgment but only reasons for judgment and the May 1, 1986, document is the judgment.
We reverse and set aside said judgment insofar as it is in favor of the plaintiffs and against Champlin Petroleum Company and its in-house counsel, Greg Gibson, and order all cost below and on appeal be assessed equally between plaintiffs and Champlin Petroleum Company.
REVERSED.

. Art. 1461. Production of documents and things; entry upon land; scope
Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy any designated documents including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form, or to inspect and copy, test, or sample any tangible things which constitute or which are in the possession, custody, or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon, within the scope of Articles 1422 through 1425.

. The stipulation provides in pertinent part:
"NOW THEREFORE Shaw agrees that the ex parte order he obtained shall have the effect of a Request for Production under La.C.C.P. Art. 1461 but that no formal response is to be necessary in accordance with said articles and Champlin shall waive any legal delays it may have under the law to respond. In the event that Shaw determines that: a) the return of Champlin to this discovery request is incomplete or, b) Champlin and Shaw cannot agree upon the extent of the documents sought, or c) any other dispute arises with respect to such production, then Shaw or Champlin shall have *1056 the unabridged right to seek a protective order or to compel the further production of documents. None of the parties hereto shall be prejudiced by the ex parte order described above and Shaw shall not have the right to seek sanctions without first giving Champlin an opportunity to cure any alleged deficiency by way of a motion to compel production of documents, with an opportunity for a hearing by Champlin, all pursuant to the Louisiana Code of Civil Procedure and particularly article 1469(2)."

. ‘The court notes that the parties at a recent status conference have agreed to discovery, relevant procedures, times, dates and to act responsibly in providing each other with adequate space and facilities wherein to conduct discovery without distraction and interruption, therefore the Motion for an Order to Compel Discovery and Sanctions is considered moot."