590 So.2d 1209 (1991)
Louis E. WIGGINS, Individually, and as Administrator of the Estate of Hunter L. Wiggins, Eric M. Wiggins and Maggie A. Wiggins and Stacey S. Wiggins
v.
EXXON CORP.
No. 90 CA 1010.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
Rehearing Denied January 22, 1992.
Jacques F. Bezou, New Orleans, and Fred A. Blanche, III, Baton Rouge, for plaintiff-appellant Louis E. Wiggins, Ind., etc.
Daniel R. Atkinson, Jr., Baton Rouge, for intervenor-appellant American Gen. Fire & Cas. Co.
E. Burt Harris, New Orleans, for defendant-appellee Exxon Corp.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Louis E. Wiggins (Wiggins) brought this suit against Exxon Corporation (Exxon), alleging he suffered personal injuries when he struck his head on a pipe while working on Exxon's premises on March 13, 1986. His wife Stacey and his three minor children joined in the suit seeking damages for loss of consortium. (Hereinafter Wiggins, his wife, and children are collectively referred to as plaintiffs.)
Wiggins was employed by American Inspection & Testing Laboratories, Inc. (AITL) at the time of the accident. AITL's worker's compensation insurer, American General Fire & Casualty Company (American), intervened in the suit to recover worker's *1210 compensation payments and medical expenses paid to and on behalf of Wiggins.
After trial on the merits, the jury returned a verdict in favor of plaintiffs. Wiggins was awarded total damages of $424,000.00, apportioned as follows: physical injury, $50,000.00; physical and mental pain and suffering, $50,000.00; loss of earnings, $250,000.00; and medical expenses, $74,000.00. The jury made no award for permanent disability. Stacey was awarded $20,000.00 for loss of consortium; the children were awarded $10,000.00 each.
The jury found Wiggins' injury was caused by the combined fault of Wiggins and Exxon. Fault was apportioned 70% to Wiggins and 30% to Exxon. American was awarded 30% of the amount for which it intervened.
From this judgment plaintiffs and American (appellants) appeal. Appellants make the following assignments of error: (1) the jury erred in assigning 70% fault to Wiggins; (2) the trial court erred in refusing to include a jury interrogatory regarding whether the fault attributed to Wiggins was a legal cause of his injury; (3) the jury's award of $50,000.00 for physical injury and $50,000.00 for pain and suffering was inadequate; and (4) the jury erred in failing to award damages for permanent disability.

JURY INTERROGATORY
Appellants contend the trial court erred in failing to submit an interrogatory to the jury requiring a finding of whether the fault, if any, of Wiggins was a legal cause of his injury.
An objection to the court's failure to give a particular charge or interrogatory must be made before the jury retires to deliberate. La.C.C.P. arts. 1793 and 1812. Failure to object timely constitutes a waiver of that objection; appellants may not raise the issue for the first time on appeal. Bell v. Vickers, 568 So.2d 160, 166 (La.App. 2d Cir.1990); Hanks v. Barge Transport Co., 563 So.2d 1297, 1300 (La.App. 3d Cir.), writ denied, 569 So.2d 964 (1990). Our review of the record shows appellants made no objection to the interrogatories at trial. Thus, they may not now raise this issue on appeal.

COMPARATIVE FAULT
Appellants contend the jury was clearly wrong in assessing 70% fault to Wiggins.
Wiggins was working for AITL x-raying pipe at the oxo unit at Exxon at the time of the accident. The area in which he was working had been barricaded with tape to prevent accidental exposure to radiation by persons on the Exxon premises. At the end of the work day on March 13, Wiggins took down the barricade tape and began walking toward his employer's truck. He testified he was in a hurry. He was walking fast and watching his feet. According to Wiggins, while walking under a pipe band he walked into a low-hanging pipe with such force that he saw stars and broke some of his teeth. Although Wiggins testified he reported the accident to an Exxon employee when he could not find the chief of security, Exxon had no record of the accident.
Wiggins testified the pipe on which he struck his head was dark brown or black and was "camouflaged" by poor lighting. He never saw it before the accident. Wiggins is 6 feet, 1½ inches tall and was wearing a hard hat which added approximately 4 inches to his height. He testified the pipe was about 6 feet above the ground.
To prevent accidents such as the one alleged by plaintiff, Exxon provided designated walkways which were designated by yellow lines on the concrete floor. There were also accessways which had 10 feet clearance because heavy equipment was driven through them. Raymond H. Comingore, Exxon Chemical's operations manager for the oxo plasticizer operations, testified the accessways were the preferred method of getting around the oxo unit.
Comingore testified there were some cases of obstructions in designated walkways. However, those obstructions were painted fluorescent orange or highlighted with red barricade tape. All pipes at head *1211 level, whether in a designated walkway or otherwise, were required to be so marked.
Comingore testified areas under pipe bands are never designated walkways. Donald Jenkins, operations supervisor at the Exxon Chemical oxo unit, also testified areas under pipe bands are not designated walkways. They are suitable for walking under only if checking for leaks. David Lockhart, Wiggins' supervisor, testified there are open areas through which a person could walk which are not designated walkways, but because of the nature of the unit, there are hazards "anywhere in there that is not designated to walk."
Approximately a year after the accident, Lockhart inspected the area where Wiggins was working at the time of the alleged accident. The only low-hanging pipe he found was not in a designated walkway.
Wiggins testified that in 60% to 75% of the plants in which he had worked the areas under pipe bands were designated walkways. However, he also testified those walkways were usually marked with yellow lines. Wiggins' testimony was extremely equivocal as to whether he was in an accessway or designated walkway at the time of the accident. He stated he did not "exactly recall" whether there were yellow lines on the ground at the site of his accident.
Comingore, Jenkins, and Lockhart all testified regarding the lighting in the area where the accident occurred. They described the lighting at night as "adequate for walking," "good," and "sufficient," respectively.
A court of appeal may not set aside a jury's findings in the absence of manifest error. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. If the jury's findings are reasonable in light of the record reviewed in its entirety, we may not reverse even though we may have weighed the evidence differently if sitting as the trier of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Wiggins had worked at numerous plants, including Exxon, during his twenty-year career. He was familiar with the dangers posed by low-hanging pipes. Wiggins testified that at the time of the accident he was walking fast and not keeping a proper lookout. Furthermore, there was an abundance of evidence from which the jury could have concluded Wiggins was not walking in a designated walkway at the time of the accident.
Exxon clearly bears some fault for failing to paint or otherwise mark the pipe on which Wiggins struck his head, but we cannot say the jury was manifestly erroneous in apportioning the fault 70% to Wiggins and 30% to Exxon.

QUANTUM

Physical Injury and Pain and Suffering
Appellants contend the jury abused its discretion in awarding Wiggins a total of $100,000.00 for pain and suffering and physical injury.
Wiggins sought treatment from a chiropractor the day following the March 13, 1988, accident. He was hospitalized at Our Lady of the Lake Regional Medical Center from May 21 to May 26, 1986, where he underwent diagnostic testing. He was seen while in the hospital by Dr. John Clifford, a neurosurgeon. Dr. Clifford's diagnosis on discharge was cervical radiculopathy on the left, primarily at C-6, secondary to spondylosis and/or herniated disc.
When conservative treatment failed, Dr. Clifford performed an anterior cervical discectomy and fusion at the C-5/6 and C-6/7 levels on August 5, 1986. The post-operative diagnosis was herniated intervertebral discs at C-5/6 and C-6/7. Wiggins continued to have complaints of cervical, arm and shoulder pain after surgery and suffered from depression. Wiggins underwent diagnostic testing which showed no nerve impingement. Dr. Clifford referred Wiggins to the Touro Infirmary Pain Center where he underwent inpatient treatment from May 22, 1988, to June 17, 1988.
Wiggins has not worked since March 13, 1986. At the time of trial he was taking *1212 Vicodin for pain and Flexeril, a muscle relaxer.
Although the awards for pain and suffering and physical injury appear to be on the low side of damage awards for similar injuries, it was uncontroverted that Wiggins suffered another accident on March 8, 1986, in which he struck his head on a valve. Wiggins told Dr. Clifford that he had injured his neck on March 8, 1986, when he leaned over while x-raying a pipe, then stood up and struck his head. That accident jammed his neck, stunned him and caused him to see stars. He told Dr. Clifford he then re-injured his neck 5 days later, on March 13, 1986, when he struck the low-hanging pipe.
Keith R. Wales, who worked with Wiggins, testified he witnessed the March 8, 1986, accident. Wales testified the force of the blow knocked Wiggins to his hands and knees. Wiggins admitted the March 8 accident occurred but denied it was a forceful blow which made him fall to his knees.
Wales also testified that on March 13, 1986, after the accident sued upon, Wiggins struck his head on the low doorframe of the darkroom used by AITL to develop x-ray film.[1] The blow caused him to stumble backward. Wiggins told Wales: "%*#*, I did it again." He then told Wales he had struck his head on a low-hanging pipe a few minutes earlier. Wiggins testified at trial he did not recall striking his head on the darkroom doorframe but, if he did, it was "incidentally."
Both Dr. Clifford and Dr. Richard Morse, the director of the Touro Pain Center, testified that some of Wiggins' problems could be attributed to these other accidents. The jury obviously found Wiggins' injuries were attributable only in part to the March 13 accident which was the subject of this lawsuit. The jury's award of $100,000.00 for the portion of Wiggins' injuries which it determined were caused by the accident sued upon is not an abuse of discretion.

Permanent Disability
Appellants contend the failure of the jury to award damages for permanent disability is manifestly erroneous.
Dr. Clifford testified that the last time he saw Wiggins, he felt Wiggins was "more or less" totally and permanently disabled from working because of the degree of discomfort he was experiencing. However, Dr. Clifford had not seen Wiggins for approximately one year before trial.
Dr. Morse last saw Wiggins nine months before the trial. He stated when he last saw Wiggins, he was not very optimistic about his long-term improvement. Since he had not seen him in nine months, however, he could not testify whether Wiggins' prognosis had changed since then. He stated there was a possibility he would be able to return to the work force, but he could not "give the course or the date of it."
Dr. Morse dictated a discharge addendum on June 17, 1988, when Wiggins was discharged from the Pain Center. That document stated there was evidence of extrusion of the fusion fragments and minimal spondylitic defects at C-6/7, but this did not account for his symptoms; he had minimal neurologic findings which appeared exaggerated; the diagnostic studies were negative; no further neurosurgical, diagnostic, or therapeutic procedures were recommended; and there was no need for removal of the extruded bone fragments. The addendum further stated Wiggins may be suffering from residual radicular pain but "we are seeing an amplification of symptoms due to his state of high anxiety." The addendum stated Wiggins was unable to return to work for at least twelve months.
No evidence of a recent medical evaluation of Wiggins' disability was presented at trial. Wiggins testified he did not accept that he was totally disabled and that "whatever it takes, I want to get better so I can go to work." The record shows Wiggins participated in a deer hunting trip in *1213 1988 during which he shot two deer. He has fished approximately twelve times since the accident and participated in two bass fishing tournaments in 1987.
The evidence of his ability to engage in these recreational pursuits, the lack of a recent medical evaluation of his disability status, and the equivocal testimony of Dr. Morse and Dr. Clifford regarding the permanence of his disability, lead to the conclusion the jury was not manifestly erroneous in determining Wiggins was not permanently disabled and in making no award for this item of damage.
Accordingly, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
CRAIN, J., dissents. The jury was manifestly erroneous in assessing 70% fault to Wiggins and only 30% to Exxon.
NOTES
[1] The darkroom was a six-by-six-foot box built onto the bed of a pickup truck. The doorway was approximately 5 feet, 9 inches high.