637 So.2d 538 (1994)
AUTIN'S CAJUN JOINT VENTURE & Autin's Cajun Cookery, Inc.
v.
KROGER COMPANY.
No. 93 CA 0320.
Court of Appeal of Louisiana, First Circuit.
February 16, 1994.
Writ Denied April 29, 1994.
*539 Charles E. Hamilton, III, M. Lisabeth Talbott, Donald R. Mintz and Michael A. Berenson, New Orleans, for plaintiff-appellant Autin's Cajun Cookery.
George Fagan and Robert E. Leake, Jr., New Orleans, for defendant-appellee Kroger Co.
Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Autin's Cajun Cookery Joint Venture (Autin's) is a partnership comprised of two partners: Louisiana Corporation and Autin's Cajun Cookery, Inc. It was established for the purpose of developing and marketing Cajun seasonings and food products. J.C. Autin, the moving force behind this enterprise has been engaged in the food processing, catering and restaurant business for many years through numerous corporations. The Kroger Company, at its South Carolina plant had been manufacturing cajun spices for one of Mr. Autin's corporations, Autin's Smoke Factory, Inc.[1] Ray Gibson, a Kroger employee of its manufacturing division, suggested to Autin's that Autin's develop a cajun mayonnaise and other mayonnaise based products to be manufactured by Kroger to Autin's specifications. Autin's submitted its recipe for the cajun mayonnaise to the research and development (or technical) department of Kroger manufacturing division. From this recipe Kroger was to develop a formula for the commercial production of the mayonnaise and a tartar sauce. It is uncontradicted that Autin's would not be charged for the refinement and development of the formula. Once the formula was finalized and perfected Autin's would purchase orders of the products from the plant for sale in supermarkets, gourmet shops, etc., nationally and in Canada and Great Britain. Autin's also hoped to sell the products to the Kroger supermarket chain. Sample batches of the mayonnaise products were produced by Kroger for Autin's. Autin's understood the shelf life of the mayonnaise products to be 12 months. The first production run of the cajun mayonnaise occurred in August, 1988. Autin's ordered approximately 14,700 cases of the products. *540 Cases of the mayonnaise products were shipped to designated warehouses from the Kroger plant pursuant to Autin's instructions. Shortly thereafter, problems with the products began to appear. The product began to de-stabilize or separate, discolor and eventually become rancid. The mayonnaise products had to be recalled, the orders canceled and the product destroyed. Kroger requested that Autin's share the cost of attempted reformulation of the product to cure the stability problem which had to be done before a new production run of the mayonnaise. Autin's refused to share the cost, negotiations between Kroger and Autin's broke down and this action ensued.
Autin's sued Kroger for breach of contract, negligent misrepresentation, detrimental reliance, and violation of the Unfair Trade Practices and Consumer Protection Law.
Among the damages allegedly due Autin's were the following:
a) Expenses incurred by Autin's in connection with the labels printed for the various Mayonnaise Line products;
b) Expenses incurred by Autin's in connection with development advertising and promotion of the Mayonnaise Line;
c) Expenses incurred by Autin's in connection with removal, destruction and/or return of the Mayonnaise Line from store shelves.
d) Lost profits arising out of the cancellation of existing orders and the return of the product from customers which had already received it;
e) Future lost profits arising from Kroger's failure to develop the Mayonnaise Line to a marketable state;
f) Expenses that Autin's has incurred to determine the source of the problems in the Kroger manufacturing process, and to develop the Mayonnaise Line to a marketable state as a result of Kroger's refusal to do so;
g) Damages for loss of business reputation and damage, to the good name of Autin's Cajun Cookery, Inc.;
h) Lost sales and profits in the Spice Line as a result of the problems experienced in the Mayonnaise Line;
After trial on the merits special interrogatories were submitted to the jury. The interrogatories provided in pertinent part:
We the Jury in the above-captioned matter, find as follows:
1. Did Kroger breach any contract with Autin's? (Answer Yes or No)
 Yes ___________ No ___________
2. Did Kroger make representation to Autin's upon which Autin's reasonably relied to its detriment? (Answer Yes or No)
 Yes ___________ No ___________
3. Did Kroger negligently make misrepresentations to Autin's? (Answer Yes or No)
 Yes ___________ No ___________
[Instructions: If you answered any one of questions 1, 2 or 3 "Yes" then proceed to question 4. If you have answered "No" to questions 1, 2 and 3, your deliberations are ended. The foreman should sign and date this form and you may return to the courtroom.]
4. Did Autin's sustain any loss as a direct result of any improper conduct of Kroger? (Answer Yes or No)
 Yes ___________ No ___________
[If you answered question 4 "No" you may skip the remaining questions on the form.]
In response to the interrogatories the jury found there was no breach of contract by Kroger; Kroger made negligent misrepresentations to Autin's; Autin's reasonably relied on Kroger promises or representations to Autin's detriment; however, Autin's suffered no damages as a result thereof. In conformity with the special verdict, judgment was rendered in favor of Kroger. Autin's subsequently filed a motion for judgment notwithstanding the verdict and alternative motion for new trial on the issue of quantum. The motion was subsequently denied by the trial court.
Autin's has appealed, alleging as error:
1. The trial court erred by not instructing the jury that a finding of detrimental reliance implies an injury to the plaintiff and requires an award of damages.
2. The trial court erred by confusing the jury with a comment about being pregnant *541 in response to the jury's question about detrimental reliance damages.
3. The trial court erred by refusing to grant a judgment notwithstanding the verdict awarding damages to Autin's based upon the jury's finding of detrimental reliance.
4. Because the jury's verdict was legally inconsistent in finding detrimental reliance but finding no damage to Autin's, the trial court erred in denying a new trial on the issue of quantum.

JURY INSTRUCTIONS
In the first assignment of error Autin's contends the trial court erred in failing to properly instruct the jury that if it finds detrimental reliance it must award damages. In the second assignment of error Autin's contends the trial court confused the jury when it sought additional instructions regarding "detrimental reliance damages."
The trial judge's jury charges regarding detrimental reliance were as follows:
Now, a person may be obligated by a promise when that person knew or should have known that the promise would induce a second person to reasonably rely on the promise to his detriment. Recovery under these circumstances may be limited to the expenses incurred, or damages sustained as a result of the second person's reliance on the promise.
The trial court additionally instructed the jury regarding answering the interrogatories;
All right, this basically is what you are going to get. It is two pages. Ten questions, and a place down at the bottom for the foreperson to sign it, and a place for the date. And it merely says interrogatories. Those are questions 1) Did Kroger breach any contract with Autin's? Answer yes or no. When 9 of you can get one answer, yes or no, whatever it is, when 9 of you are of the same mind, write that down, check it off. I don't need to know how many number of you did it, I will assume that when you tell me that you have checked off each one of these, appropriately that you have 9 to do it. Don't give me the number of people that voted. I can find that out later on. Just check off yes or check off no. Whichever you see fit to do. Everybody understand that? Okay. 2) Did Kroger make representations to Autin's upon which Autin's reasonably relied to its detriment? Answer, yes or no. Okay, 9 of you agree on the same answer, check it off, whichever that is. Then it has a little instruction there which you will take some time to look at it and think about it, it will help you. If you have answered any one of the questions 1, 2, orI am sorry. Did Kroger make [sic] negligently make representations to Autin's? That is number 3, yes or no. Now, you have 3 questions to answer. Yes or no. If you have answered any one of the questions, 1, 2, or 3 yes, then proceed to question 4. Any one of these that you answered yes, go to 4. If you answered no to all of these, shut it down, sign your verdict and come in. Because then, Kroger hadn't done anything wrong, if you say no to all of this. All right, do you understand that? That is what you are telling me. Any one of those that you check, then you go on to number 4.
Prior to the jury's retiring to deliberate counsel for both parties were given the opportunity to raise any objections to the Court's jury charges as well as the special interrogatories. Mr. Hamilton, co-counsel for Autin's, objected to the charge regarding detrimental reliance, La.C.C. art. 1967, particularly with respect to the court's statement that damages for detrimental reliance could be limited to expenses incurred or damages suffered as a result of the promisee's reliance. The objection was not directed to the judge's alleged failure to state that damages are a necessary requirement for the finding of detrimental reliance as revealed in the colloquy.
BY MR. HAMILTON:
Yes, Your Honor, there are one or two that we would like to
BY THE COURT:
All right, if you can name them by number or whatever you think is appropriate.
BY MR. HAMILTON:
The number is number 16

*542 BY MS. TALBOT:
No, the charge after 16.
BY THE COURT:
Who's charge?
BY MR. HAMILTON:
It is after our number 16, and it is thelet me see if I can find the page number for you and get that for you quickly. It was respect to
BY THE COURT:
Promissory estoppel detrimental reliance charge?
BY MR. HAMILTON:
Yes, Your Honor.
BY THE COURT:
All right, duly noted.
BY MR. HAMILTON:
And I believe that is the one that we have an objection with respect to.
BY THE COURT:
Any charges which the Court has failed to give that you object to?
BY MR. HAMILTON:
I don't have one with respect to the interrogatories, which we might have to address out of the presence of the jury, as well.
BY THE COURT:
All right, and Mr. Fagan?
. . . .
BY THE COURT:
. . . .
Now, let's start with the one, do you want to articulate any further your objections, Mr. Hamilton with regard to the charge, I think that was Kroger charge, promissory estoppel detrimental reliance?
BY MR. HAMILTON:
Yes, it was unnumbered, but it is the Civil Code article 1967 charge and we had objection to the inclusion in the instruction of that last sentence about recovery may be limited. It is in the Code, but I don't believe it is an essential part of the law in this case, and it should not be a part of the charge. That is the nature of our objection.
BY THE COURT:
That objection is duly noted.
The detrimental reliance charge was correct as far as it went. If a concomitant finding of damages is necessary to a finding of detrimental reliance there was no objection to the instruction in that regard. This assignment of error has no merit.
In the second assignment of error Autin's contends the trial court gave a confusing instruction when the jury returned with a question regarding interrogatory number 2 on detrimental reliance.
The jury returned at 7:25 p.m. with a question. The jury had answered questions 1, 3, and 4 (breach of contract, negligent misrepresentation and damages) but was deadlocked on question 2, detrimental reliance. The court ordered the jury to resume deliberations stating: "Take care of 2 and then you can do what you care to with 4. But 1, 2, and 3, take care of those first."
(JURY RETURNED WITH QUESTION # 2, AT 8:00 P.M.)
BY THE COURT:
All right, ladies and gentlemen, I have your second interrogatory to the Court, your question is, in question 2, does detriment mean partial or full? I can only respond to you that detriment in any apportion or magnitude is detriment. To be crude about it, you have heard the phrase a little pregnant, you either are or you aren't. That is basically all I can tell you.
(JURY RETURNED TO DELIBERATIONS AT 8:03 P.M.)
The jury returned 2½ hours later with a verdict.
If Autin's is correct in its contention that the finding of detrimental reliance requires a concomitant finding of damages then the trial judge's charges as shown above may be an incorrect interpretation of the law. See La.C.C. art. 1967; Herman, Detrimental Reliance in Louisiana LawPast, Present, and Future(?): The Code Drafter's Perspective, 58 Tul.L.Rev. 707 (1984); Larroumet, Detrimental Reliance and Promissory Estoppel as the Cause of Contracts in Louisiana and Comparative Law, 60 Tul.L.Rev. *543 1209 (1986). However, counsel for Autin's failed to object contemporaneously to the alleged incorrect or confusing instructions. Pursuant to La.C.C.P. art. 1793, in order for an appellate court to consider whether the trial court correctly instructed the jury regarding appropriate legal standards, the appellant must have objected contemporaneously, stating specifically the matter to which he objects and the grounds of the objection. Menzie Tile Co., Inc. v. Professional Centre, 594 So.2d 410 (La.App. 1st Cir.1991), writ denied, 600 So.2d 610 (1992). Because the objection is waived it is unnecessary for us to resolve the legal issue of the necessity of finding damages raised by these assignments of error.

INCONSISTENT VERDICT/NEW TRIAL
In the fourth assignment of error Autin's contends the answers to interrogatory numbers two and four are inconsistent in that the jury found detrimental reliance but no damages resulting therefrom. As such the trial court should have granted a new trial on the issue of quantum.
Where the jury errs as a matter of law by returning an inconsistent verdict, the verdict should be set aside. Parliman v. Kennelly, 520 So.2d 445 (La.App. 5th Cir. 1988). Marcel v. Allstate Insurance Co., 536 So.2d 632 (La.App. 1st Cir.), writ denied, 539 So.2d 631 (La.1989).
If we assume that a finding of detrimental reliance is concomitant with a finding of damages suffered by the promisee in justifiably relying on the promise, the verdict was not "legally inconsistent," the verdict form was incorrect. The interrogatories should have been formulated differently to require a finding of damages if detrimental reliance was found to exist. The interrogatories submitted to the jury allowed the jury to find detrimental reliance without damages. A review of the record does not reveal that plaintiff objected to the allegedly flawed jury verdict form. An objection to the proposed jury verdict form must be made on the record or the objection is waived. La.C.C.P. arts. 1793, 1812 and 1813; Menzie Tile Co., Inc. v. Professional Centre, 594 So.2d at 416; Wiggins v. Exxon Corp., 590 So.2d 1209 (La.App. 1st Cir.1991), writ denied, 595 So.2d 660 (1992).
Additionally, if the verdict form had not required the jury to reach a supposedly legally incorrect verdict, our review of the record supports a finding that the jury would not have been manifestly erroneous in determining that Autin's suffered no damages in reliance on Kroger's promise or that Autin's was adequately compensated by Kroger's for expenses incurred as a result of the failure of the mayonnaise line. Consequently, legally there was no detrimental reliance. The only reason the jury found detrimental reliance and no damage, rather than simply no detrimental reliance is because of the wording of the interrogatories. Thus, the finding of a waiver of a possibly legally incorrect verdict by failing to object to the allegedly incorrect interrogatories still does not result in a jury verdict which is contrary to the evidence.
On February 23, 1989, after the product failure, Autin's submitted to Kroger a recapitulation of its expenditures pertaining to the mayonnaise based products. (Kroger Exhibit # 136). According to the document, Autin's total out of pocket costs was $167,776.69 and its net out of pocket costs was $162,273.60. Kroger apparently either reimbursed Autin's or covered the cost of Autin's expenses which totaled $163,759.07. (Kroger Exhibits 38 and 39). This sum included the cost of the mayonnaise products, freight, storage, packing, shipping and handling of mayonnaise products as well as the merchandise pickup cost, and 1/3 of the sales development costs for all of Autin's products. Autin's subsequently continued for a while to sell the Cajun spices. It sold the smoked turkeys for a while through another corporation. It found another manufacturer to produce the mayonnaise although it was found to be costly and have a shorter shelf life. Autin's dissolved when its principal financial backer withdrew its financial backing. The record supports a finding of no detrimental reliance because one of the elements, damages, is not proved.[2]
This assignment of error has no merit.

*544 JNOV

In the third assignment of error Autin's contends the trial court erred in denying Autin's motion for judgment notwithstanding the verdict on damages. A JNOV can be granted only where the trial court finds that reasonable minds could not reach a contrary verdict. The trial court can make no credibility determinations, nor draw inferences therefrom. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). On reviewing a grant of a JNOV, the appellate court uses the same standard as the trial court. Anderson, 583 So.2d at 834. When a JNOV is denied the appellate court simply reviews the record to determine whether there is legal error or whether the trier of fact committed manifest error. Our review of the record reveals no legal or manifest error.

EXPERT WITNESS FEES
In answering the appeal Kroger contends the trial court's award of expert witness fees to two of its expert witnesses should be increased.
The award of expert witness fees by the trial court should not be set aside absent abuse of discretion. La.C.C.P. art. 1920; Barnes v. Allstate Ins. Co., 608 So.2d 1045 (La.App. 1st Cir.1992). We find no abuse of discretion herein.
Accordingly, we affirm the judgment entered in accordance with the jury verdict. Costs of this appeal are assessed against appellant.
AFFIRMED.
EDWARDS, J., concurs in the result.
LeBLANC, J., concurs.
The jury must have concluded that, although there was detrimental reliance, the damages did not exceed the $163,759.07 paid by Kroger to Autin.
NOTES
[1] The spice line was subsequently transferred to Autin's. Autin's was also marketing a line of smoked meats. It was also planning and hoping to develop a hot sauce, cajun mustard and other food products if the mayonnaise products proved successful. It was also negotiating with Kroger's to export Kroger products in the overseas market.
[2] Although it was not cited as error by plaintiffs, this review also results in a conclusion that the jury was not manifestly erroneous in determining there was no damage as a result of negligent misrepresentation.