SHORTESS, Judge.
Michael G. Morris (plaintiff) allegedly was injured on May 18, 1992, while in the course and scope of his employment with Owen[1] Construction Company, Inc. (defendant). Plaintiffs request for worker’s compensation benefits was denied by defendant, who contended no accident had occurred. At the time of trial defendant had paid no compensation benefits to plaintiff, nor had it paid his medical expenses.
The hearing officer found that plaintiff had sustained an on-the-job injury, that he was disabled as a result of that injury, and that defendant was arbitrary and capricious in failing to pay benefits and medical expenses to plaintiff. Defendant appeals.
*832 FACTS
On May 18, 1992, plaintiff was employed by defendant as a laborer. Defendant was performing demolition work for the Kenner Housing Authority. Plaintiff testified that at the time of the accident his work crew was “gutting” apartments; that the floor of the apartment he was working in was flooded with one to three inches of water because a water main had inadvertently been left open; that he was removing tile from the walls in a small bathroom; that he was alone in the bathroom because the room was too small for more than one person to work in; that the maul he was using became stuck in wall plaster; and that when he tried to remove the maul from the wall, he slipped and hit his back on the edge of the bathtub.
Plaintiff further testified that he was dizzy and in severe pain for about three minutes; that he then got up and continued to work; that he did not report the accident immediately because he did not think he was seriously injured; |3that he mentioned to two fellow employees that day that he had “busted [his] ass”; that after work he walked three blocks to the apartment of a female acquaintance to watch a movie; that while relaxing on the sofa he “started feeling [his] back swelling, and the pain was getting in-tensed (sic)”; that he then walked home; and that while telling his mother good night he told her he hurt his back that day at work.
Plaintiffs mother, Dorothy Morris, testified that at about 10:30 p.m. on May 18 plaintiff told her he had injured his back at work that day. She told him she would take him to the doctor the next day.
The following day she took plaintiff to see Dr. Miguel A. Culasso, a specialist in emergency medicine. Culasso had treated plaintiff in April and May of 1991 for low lumbar pain. At that time, plaintiffs deep tendon reflexes were normal, and the straight-leg-raising test was negative. However, Culasso recommended plaintiff have a CT scan to rule out lumbar disc disease. Plaintiff testified he did not undergo that test because his pain went away.
After examining plaintiff on May 19, 1992, Culasso diagnosed lumbar radiculopathy. Culasso had no indication in his records from May 19,1992, of how plaintiff had injured his back. He assumed it was a continuation of the previous problems. His notation reads: “Had low back pain before, but not like this one. Low back pain for several.days_” Plaintiffs deep tendon reflexes were diminished on the left, and the straight-leg-raising test was now positive on the left. He recommended plaintiff have an MRI of the lumbar spine.
Plaintiff testified he called defendant’s office on May 19 after seeing Culasso and left a message for Rees Owen. On May 23 Monique Owen, Rees’s daughter-in-law, brought plaintiffs paycheck to his home. Plaintiff testified that he told her he had injured his back and needed to see a doctor; that |4she told him he would have to speak to Rees; that on May 25 and 26 he called Rees Owen’s residence, spoke to his wife, and asked that Rees call him; that Rees returned the call, denied that plaintiff had been injured, and asked that plaintiff not call any more; and that on May 27 plaintiff sent defendant a certified letter confirming his conversations with the Owenses and requesting that defendant pay his medical bills and lost wages.
Plaintiff saw Dr. Stewart E. Altman, a general surgeon, on June 6 and 10, 1992. Altman found decreased range of motion of the lumbar spine, a positive straight-leg-raising test, swelling and spasm of the back, a contusion of the hip, and a sprained knee. Plaintiff also saw Dr. Miller at Altman’s office on June 19. Miller’s findings were similar to Altman’s. Altman and Miller recommended plaintiff see an orthopedist.
On July 20,1992, plaintiff saw Dr. Alain F. Cracco, a board certified orthopedist, who had plaintiff undergo an MRI. That test showed a large left L-5/S-1 herniated nucleus pulposus. Cracco diagnosed herniated nucleus pulposus causing left sciatic neuritis. He testified this condition was caused by a traumatic incident. He recommended surgery. When plaintiff returned on December 29, 1992, Cracco noted progressive deterioration of his reflexes and again recommended surgery. On all visits Cracco told plaintiff he was to do no work of any kind.
*833 Plaintiff last saw Cracco on January 12, 1993. Cracco again recommended surgery and suggested that physical therapy, a nerve block, and local steroid injections might help until the surgery could he done. Cracco stated it was his understanding plaintiff did not return to him or have any of the recommended treatments because of his financial situation. In Craceo’s opinion, plaintiff cannot return to work in his previous occupation as a heavy laborer and without surgery has |sa 30% complete permanent partial impairment of the body as a whole. Plaintiff testified his condition has not improved since his last visit to Cracco.
Cracco stated it is not unusual for an individual to suffer a herniated disk and not feel severe pain until the next day. He said, however, if plaintiffs disk had herniated in May 1991, he would not have been able to engage in construction work thereafter.
Defendant attempted to show plaintiff had had an injury or accident between the May 19 visit to Culasso and the June 6 visit to Altman based on the lack of notations in Culasso’s records of a injury to plaintiffs hip and knee. Plaintiff denied any intervening trauma. Plaintiff stated that when he saw Culasso he did not complain about his hip or knee because “it took a couple of days to start swelling and bruising,” and his primary concern the day after the accident was his back. Culasso stated that if plaintiff had had a bruise on his knee or hip he would have expected to see some sign of it on his examination, but it is medically possible that the bruise would have been bigger three weeks later. Cracco stated a contusion might last for six to eight weeks, but if plaintiff injured his hip in the accident, he would expect the swelling to have significantly subsided by the time plaintiff saw Altman.
In support of its contention plaintiff did not suffer an on-the-job injury on May 18, defendant presented the testimony of Joseph J. Catchot, Mark Owen, and Monique Owen. Catchot testified that the water had been off for weeks at the jobsite; that there was no water on the floor in the apartment where plaintiff was working; that no mauls were being used at the jobsite; that he and plaintiff were working in such close proximity he would have known if plaintiff were using a maul or had fallen; that plaintiff had mentioned he injured his back on a previous job and continued to have back pain; and | ¡¡that numerous times plaintiff had not come to work. He admitted on cross-examination, however, that if he had been bringing a vanity downstairs when plaintiff was injured he would not have been aware of the injury; that before the alleged injury plaintiff was able to do heavy work such as lifting vanities; and that plaintiffs lost work time was due to intoxication, not back pain.
Mark Owen, defendant’s foreman and co-owner, testified that he had known plaintiff ten to twelve years; that he employed plaintiff “out of the kindness of [his] heart to give him some money”; that he gave plaintiff only “easy work” because he knew plaintiff had low back problems when he hired him; that the only tools plaintiff was using were a broom, a box, and a wheelbarrow; that he was certain no one was using a maul on the day of the alleged accident because the only maul at the jobsite was locked in his truck; and that the water had been off in the building for a month.
Mark further testified that he knew plaintiff had a tendency to get drunk, pass out, and fall down, but he knew of no incident involving injury to plaintiff after work on May 18; that he thought plaintiff did not return to work after May 18 because of “some type of a drinking problem”; that he found out plaintiff was injured when his wife told him on May 23; that he did not believe plaintiff had been injured because he knew plaintiff was not using a maul; that he did not ask Catchot whether he thought plaintiff had been injured on the job; and that his wife did not report the injury to their insurance carrier until after receipt of plaintiffs certified letter.
Monique Owen, defendant’s office manager and co-owner, testified that she handles the worker’s compensation claims for defendant; that she first learned plaintiff was injured when she brought his paycheck to him on May 23; that she knew plaintiff had a preexisting back problem when defendant hired that she knew from payroll records that plaintiff missed work at least once a |7him; *834 week; that her husband and brother told her he missed work because of his drinking problem; that on May 23 she told Mark plaintiff was injured; that on May 25 she asked every employee at the jobsite if they knew anything about plaintiff being injured on May 18, but no one did; that on May 25 she telephoned defendant’s insurer about plaintiffs alleged accident but did not complete the paperwork until a few days later; that she told the insurer plaintiff had not been to a doctor because she did not know he had seen Culasso; that she did not arrange for him to have medical care because she was suspicious about the accident because he reported it five days later; and that the week before the accident she did not let him work for two days because he was having back pain, although she observed him change the brake shoes on a car later that week.
EVIDENTIARY ISSUE
Defendant assigns as error the hearing officer’s refusal to allow defendant to question plaintiff about altercations with police or injuries he may have suffered while intoxicated subsequent to the date of the alleged accident. Plaintiff denied that he suffered any injury to his back subsequent to May 18, 1992. The hearing officer allowed defendant to introduce emergency room records dated October 25,1992, January 1,1993, and January 24, 1993, showing incidents in which plaintiff sustained facial injuries. The hearing officer also allowed defendant to question plaintiff extensively about his drinking problems prior to May 18,1992, including misdemeanor arrests, but refused to allow defendant to embark on a fishing expedition about plaintiffs drinking problems after the accident.
We find no abuse of the trial court’s discretion in refusing to allow such questioning. Defendant introduced no evidence to support its contention that plaintiff was injured | awhile intoxicated subsequent to May 18, 1992, and further failed to proffer the excluded testimony. Error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. Men-zie Tile Co. v. Professional Centre, 594 So.2d 410, 415 (La.App. 1st Cir.1991), writ denied, 600 So.2d 610 (La.1992); La.Code Evid. art. 103(A)(2); La.C.C.P. art. 1636. This assignment of error has no merit.
HEARING OFFICER’S FACTUAL FINDINGS
Defendant also assigns as error the hearing officer’s factual findings that plaintiff had an on-the-job accident and was injured while working for defendant. If there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993). In this case, there were two permissible views of whether plaintiff had an accident and was injured while working for defendant. The hearing officer obviously found the testimony of plaintiff and his mother more credible than that of defendant’s witnesses, and we are not empowered to disturb such credibility determinations. Plaintiffs testimony that he was injured on May 18, 1992, is supported by the fact that he was treated by Culasso the day following the accident. His contention that this injury was distinct from his previous work-related injury is supported by Culasso’s findings that plaintiff had normal deep tendon reflexes and a negative straight-leg-raising test in 1991 but diminished reflexes and a positive straight-leg-raising test in 1992. We find no manifest error in the hearing officer’s factual findings.
FINDING THAT DEFENDANT WAS ARBITRARY AND CAPRICIOUS
Defendant contends there was a bona fide dispute in this case as to whether plaintiff sustained a work-related injury, and thus the hearing officer erred in finding it arbitrary and |9capricious. We find, however, this finding is amply supported by the record. The medical evidence is uncontro-verted that plaintiff sustained a serious, disabling injury. Defendant produced no evidence that plaintiffs herniated disk existed prior to May 18,1992. Defendant refused to pay worker’s compensation benefits or plaintiffs medical bills based on its wholly unsubstantiated suspicion that plaintiff suffered an *835 intervening injury, based primarily on plaintiffs history of alcohol abuse. Such suspicion does not constitute a “bona fide dispute.”
CONCLUSION
For the foregoing reasons, the decision of the hearing officer is affirmed at defendant’s costs.
AFFIRMED.

. Although the first name of the defendant company is referred to in the record as “Owens” and "Owen,” most of the pleadings filed by defendant's attorney use the spelling "Owen.”