723 So.2d 1093 (1998)
Cedric L. WILLIAMS
v.
EAST BATON ROUGE PARISH SCHOOL BOARD; Istrouma Senior High School; and Capitol Senior High School.
No. 97 CA 2645.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*1094 Benn Hamilton, Baton Rouge, for Plaintiff-Appellant/Appellee.
Harold J. Adkins, Baton Rouge, for Defendants-Appellees/Appellants.
BEFORE: SHORTESS, C.J., CARTER and WHIPPLE, JJ.
SHORTESS, C.J.
In the fall of 1994, Cedric L. Williams attended Istrouma Senior High School in Baton Rouge, Louisiana. He was a member of Istrouma's junior varsity football team. On August 31, 1994, Williams participated in a football game against Capitol Senior High School. During the course of the game, Williams attempted to tackle a player on the opposing team and was injured. After an ambulance arrived at the football field, Williams was transported to Baton Rouge General Medical Center. He was not admitted for treatment at Baton Rouge General because he did not have medical insurance. Approximately three hours later, he was transported to Earl K. Long Hospital where it was determined his left leg and hip were broken in four places. Pins and rods were surgically inserted in his leg. Since the accident, Williams has been under the care of several doctors who have treated his left leg, which now is an inch to an inch and a half shorter than his non-injured leg.
Williams (plaintiff) filed a petition for damages against the East Baton Rouge School Board, Istrouma Senior High School, and Capitol Senior High School (collectively, defendants) contending his injuries were the result of him tripping over a component of the long-jump track, which ran near the football field and created an unreasonable risk of harm that caused his injury. Plaintiff amended his petition requesting an award of damages to his father, Isaac Williams, for mental anguish and emotional distress experienced as a result of witnessing the injury.
After a trial on the merits, the trial court found defendants were not liable for plaintiff's injury because the long-jump runway did not present an unreasonable risk of harm, and it was more probable than not that the injury was the result of plaintiff attempting to tackle the ball carrier. Isaac Williams's claim for emotional distress under Louisiana Civil Code article 2315.6 was denied, also. However, the trial court found defendants liable for damages plaintiff sustained as a result of "defendant[s'] failure to insure the plaintiff and have available insurance coverage." Defendants were also found liable to Isaac Williams for the "emotional distress for having to watch his son in continued pain for the time he spent at Baton Rouge General Medical Center and waiting at Earl K. Long Hospital, all of which was [a] result of the defendants' failure to insure the plaintiff ...." Plaintiff was awarded $23,166.62;[1] Isaac Williams was awarded $675.00 for the emotional distress of watching his son in pain while waiting to be transported to another hospital; and expert fees of *1095 $1,610.00 were awarded against defendant.[2] Plaintiff and defendants appeal this judgment.
Plaintiff asserts seven assignments of error, contending the trial court committed errors of law: 1) in finding defendants were not strictly liable for the injuries plaintiff suffered; 2) in not finding defendants were negligent in the location and maintenance of the long-jump and track facility; 3) in finding plaintiff's injuries were more probably than not caused by an attempt to make a tackle rather than tripping on the side board of the long-jump track; 4) in refusing to compel the testimony of defendant's attorney and to permit plaintiff to proffer the requested testimony; 5) in computing plaintiff's past and future medical expenses; 6) in failing to award certain expert witness's fees and/or in the manner of computing expert witness fees; and 7) in denying the claims of Isaac Williams for emotional distress under the provisions of Civil Code Article 2315.6. Defendants present one assignment of error, "The trial court committed reversible error when it ruled that the School Board breached a duty in favor of Cedric Williams for failing to have available insurance or obtain a valid waiver of insurance coverage."

ASSIGNMENTS OF ERROR ONE THROUGH THREE
Plaintiff contends in his first two assignments of error that the court erred in not finding defendants either strictly or negligently liable for plaintiff's injuries. He contends in assignment of error three that the court erred in finding plaintiff's injuries were more probably than not caused by an attempt to make a tackle rather than by tripping on the side board. Plaintiff testified he was playing defense and was in pursuit of the opposing team's player, Reco Thomas, who was carrying the ball. He stated he did not make contact with Thomas, but, at the conclusion of the play, ran out of bounds and slipped on a board and fell. Plaintiff's father, Isaac Williams, also testified he was watching the game from the stands and that plaintiff was injured by falling over something and not by tackling the ball carrier.
However, the coaches watching the football game testified plaintiff did tackle Thomas and went down thereafter. Donald Clark, offensive coordinator of the junior varsity team at Capitol High in 1994, stated he witnessed the accident and saw Thomas was "being hit at the ending of the play and he [was] knocked out of bounds. The Istrouma player [plaintiff] is down right there at the edge of the sideline between the field and the [long-jump] runway." He also testified he did not see plaintiff trip or slip on the longjump board at the end of the tackle.
Booker Hawkins, assistant football coach at Capitol in 1994, stated when the Istrouma players and Thomas arrived at the sideline, the Istrouma players tackled Thomas and "fell somewhere in between the sidelines and the out of bounds line." He also stated he did not see any of the players trip or slip over the side board.
McKinney Evans, head football coach and athletic director at Istrouma, also witnessed the game. He testified he saw four of his defensive backs attempt to tackle the ball carrier, and they all made contact with the carrier. He also stated he observed plaintiff at the conclusion of the play, lying parallel to the out-of-bounds line, with his left shoulder on the playing field, and that none of his body was touching the runway or the boards of the runway.
The ball carrier, Reco Thomas, testified by deposition that plaintiff did tackle him very close to the sideline. He stated both of them landed on the ground together near the out-of-bounds line.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong.[3] In order to reverse, the court of appeal must: (1) find from the record that a reasonable factual basis for the decision of the trial court does not exist, and (2) find that the record *1096 affirmatively establishes the decision is clearly wrong or manifestly erroneous.[4] After a review of the record, we find the trial court was not manifestly erroneous in finding defendants were not liable for plaintiff's injury. While there was conflicting testimony as to whether plaintiff tripped over the long-jump board, there was ample testimony validating the court's finding that plaintiff did not trip or fall, but was tackling his opponent when he was injured. Each of the coaches who testified during the trial and by deposition stated plaintiff was tackling the ball carrier when he fell and landed between the out-of-bounds line and the long-jump runway. These assignments lack merit.

ASSIGNMENT OF ERROR FOUR
Plaintiff contends the trial court erred in not giving him the opportunity to make a proffer of the testimony of several witnesses, who he alleges changed their account of the how the injury occurred. Plaintiff asserts some of the witnesses changed their testimony, and the only way this matter could be proven would be through the testimony of defendants' attorney or inspection of the notes he took at the time these statements were made. He filed a motion to compel the testimony of defendants' attorney of record prior to trial. This motion was denied. During the course of the trial plaintiff requested to make a proffer of defense attorney's notes, and this request was denied.
The court has held, "Error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel."[5] While the language of Louisiana Code of Civil Procedure article 1636(A) is mandatory, "a reversal is not warranted unless the party alleging error shows that the error, when compared to the record in its totality, had a substantial effect on the outcome of [the] case."[6] The content of the defense attorney's notes and his papers were not proffered, and we cannot review the substantial effect of the trial court's refusal to allow counsel to proffer the excluded evidence. This assignment of error lacks merit.

ASSIGNMENT OF ERROR FIVE AND SIX
Plaintiff contends the trial court erred in failing to award Dr. Randall Lea's past medical bills and expert fees. Plaintiff also contends the trial court abused its discretion in awarding future medical expenses of only $7,000.00. The trial court found defendants were not liable for plaintiff's injury based on the runway-board theory. Defendants were liable, however, for permitting plaintiff to participate in the football game without being insured.
In its judgment, the trial court awarded $14,916.62 for past medical bills. Plaintiff asserts this amount does not include Lea's medical bill for $3,077.00. Moreover, all of plaintiff's expert witnesses except Lea were awarded fees. Lea's deposition was introduced into evidence at the trial since he did not testify. His bill was attached to his deposition rather than included with the rest of the medical bills. During oral arguments, even opposing counsel conceded not awarding Lea an expert fee and not computing his medical bill in the award for past medical expenses was more than likely an oversight on the part of the trial court.[7] Therefore, plaintiff is entitled to $3,077.00 in addition to the amount awarded by the trial court for past medical expenses. Also, plaintiff is entitled to an award of $350.00 for an expert fee for Lea in addition to the amount awarded by the trial court for expert fees.
There was testimony from Lea and Dr. David Corbin that plaintiff will need future *1097 medical treatment because of the one to one and one half inch difference in his leg lengths (the injured leg is now shorter than the non-injured leg). Corbin testified plaintiff will experience lower back pain due to the difference in leg lengths, and he will possibly have to wear some type of corrective shoe. The trial court awarded $7,000.00 in future medical expenses. However, the award was too low and was a clear abuse of the trial court's vast discretion. Plaintiff is a young man who will have to endure more surgery without the benefit of insurance coverage. When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses just because the record does not provide the exact value of the necessary expenses.[8] Based on plaintiff's age and medical condition, it is our opinion the award should be raised to the amount of $12,000.00.

ASSIGNMENT OF ERROR SEVEN
Plaintiff contends the trial court erred in not awarding Isaac Williams damages under Civil Code article 2315.6, because he witnessed the injury of his son. Civil Code article 2315.6 provides as follows:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
The trial court found, "The court feels these type injuries are an expected part of the game of football and does not find the defendants liable for them, Isaac Williams cannot recover for any emotional distress under La. Civil Code art. 2315.6." As stated above, defendants are not liable for the injuries plaintiff sustained as a result of the football game. This assignment of error lacks merit.

DEFENDANTS' ASSIGNMENT OF ERROR
Defendants appeal contending the trial court erred in holding them liable for failing to provide insurance or secure an insurance-waiver form from plaintiff. Defendants state while there is a duty to provide for the supervision and safety of student athletes, there is not a duty to provide insurance for them. We disagree.
Louisiana Revised Statute 17:169 allows school boards and parishes to provide insurance for student-athletes, and it provides, in pertinent part:
A. Each parish and city school board may, for each school under its jurisdiction, purchase and maintain a policy or policies of insurance issued to the board as policy holder, the cost of each such policy to be paid for out of the athletic fund derived by each such school from its gate receipts for athletic events or from any other funds available to the school board for payment of a portion or all of such costs. Each policy so purchased and maintained shall provide the following:
(1) Coverage of every student enrolled in a school under the jurisdiction of the school board who is a member of a regular school sponsored team which participates *1098 in intramural or intermural athletics or sports, excluding teams which function solely within scheduled physical education courses. Students duly authorized to act as water boys, bat boys, referees, score keepers, coaches, managers or in other similar capacities in connection with such teams shall be considered to be members of such team for the purposes of this section;
(2) Insurance against bodily injury, death, dismemberment, or permanent disablement or any injury received by any student described in paragraph (1) above, regardless of the cause thereof and including specifically, but not exclusively, any injury resulting from accidents or the intentional or negligent acts or omissions of any person or persons, including other students, invitees, licensees, trespassers, teachers, coaches and other public employees and agents or instrumentalities of the state or a political subdivision thereof, the amount of coverage under such insurance policy not to be less than $2,500.00 per person.
While the language of the above statute gives school boards the discretion of whether to provide student-athletes insurance, once a school board decides to provide insurance to students, a duty attaches to insure that all of the athletes have access to the insurance. East Baton Rouge School Board provides insurance to its athletes, as indicated by Vernon Wells, a teacher and coach at Istrouma. He testified by deposition that the school distributes insurance packets provided by the school board to each athlete. He stated that included in each insurance packet is an insurance-waiver form, indicating the student is covered by insurance and will not hold the school responsible. Plaintiff testified he told his coach he did not have insurance, but was told he could still participate in the game. An insurance form or waiver form was not introduced into evidence, nor was any other contradictory evidence showing plaintiff had insurance. Therefore, encompassed in the duty to provide for the safety of students, a school board, which is already providing insurance to students, must also insure that the students have access to those resources to fund their medical care.
Because of the nature of contact sports, students are exposed to situations where they can and/or will be harmed. Coaches should not knowingly allow a student who has neither applied for the school's insurance nor completed the insurance-waiver form to play and be put in harm's way. Therefore, defendants did have a duty to ensure plaintiff had insurance or completed the waiver form before allowing him to play. This duty was breached when plaintiff was permitted to participate in the game even after plaintiff told his coach he had not completed the form. Thus, plaintiff had the burden of all of his medical expenses because he did not have any insurance. As stated by the trial court, "It is situations exactly like this one that the requirement for insurance exists."
Defendants further contend the delay in admitting plaintiff to Earl K. Long immediately was not due to insurance problems. Since he did not have insurance, plaintiff had to wait approximately three and one-half hours before being transported to Earl K. Long Hospital from Baton Rouge General Medical Center. The long wait plaintiff endured at Baton Rouge General was directly a result of not having insurance. Plaintiff's having to wait, in and of itself, is not the problem. The problem is that a student with four broken bones had to wait to be transferred to another hospital before anyone would treat him, which could have been prevented had he had insurance. The trial court went on to find that "[b]ecause the coaches at Istrouma allowed Williams to play without insurance coverage, he had medical bills...." Therefore, this finding is without error and defendants' assignment lacks merit.

CONCLUSION
For the foregoing reason, the judgment of the trial court is amended as follows: the amount of damages awarded for past medical expenses is increased to $17,993.62; the amount awarded for future medical expenses is increased to $12,000.00; and an expert witness fee of $350.00 is awarded for the testimony of Dr. Randall Lea. In all other *1099 respects, the judgment is affirmed. Costs are assessed to defendants.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Plaintiff was awarded $14,916.62 for medical bills, $7,000.00 for future medical bills, and $1,250.00 for general damages.
[2] Expert fees were awarded as follows: Dr. Rodolfo Aguilar$685 .00, Dr. Randolph Rice $300.00, Dr. David Corbin$325.00, and Joseph Palmer$300.00.
[3] Stobart v. State, 617 So.2d 880, 882 (La.1993).
[4] Id.
[5] Morris v. Owens Constr. Co., 93-2068, p. 8 (La.App. 1st Cir.10/7/94), 644 So.2d 830, 834.
[6] Gordon v. Levet, 96-600, p. 10 (La.App. 5th Cir.1/15/97), 688 So.2d 57, 63, writ denied, 97-0406 (La.4/4/97), 692 So.2d 418.
[7] We note the medical figures before us do not total $14,916.62, and the trial court did not delineate which figures were included in the total. However, defendants have not appealed this finding, therefore, the matter is not before us.
[8] Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La.1992).